## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TERESA SMITH** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-839-STE** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-30). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2019, the alleged onset date. (TR. 17). At step two, the ALJ determined Ms. Smith suffered from the following severe impairments: late effects of injury to the nervous system and diabetes mellitus. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ concluded that Ms. Smith retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 CFR 404.1567(b), with no further restrictions or limitations. (TR. 19). With this RFC, the ALJ was entitled to, and did indeed, forego a determination regarding whether Plaintiff could perform her past relevant work, instead relying on an "expedited process" at step five in applying the Medical-Vocational Rules, otherwise known as "The Grids." *See* TR. 29 (citing 20 CFR 404.1520(h), which states: "*Expedited process.* … If we find that you can adjust to other work based solely on your age, education, and the same residual functional capacity assessment . . . we will find that you are not disabled and will not make a finding about whether you can do your past relevant work at the fourth step."); *see also* Social Security

Ruling 83-11, Titles II And XVI: Capability to Do Other Work--the Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252 at (1983) (allowing application of the Grids when the claimant can perform all of the exertional demand at a given level of exertion, i.e.—a full range of "light" work).[1] Ultimately, the ALJ concluded that Plaintiff was not disabled, based on the application of Grid Rules 202.20 and 202.13. (TR. 29).[2]

## III.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support

---

[1] At step five, the burden of proof shifts to the Commissioner "to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given h[is] age, education, and work experience." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (alterations in original). One of the ways the Commissioner can meet this burden is through use of "the Grids." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The Grids are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience— and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Daniels*, 154 F.3d at 1132 (citing *Heckler v. Campbell,* 461 U.S. 458, 461–62 (1983)).

[2]   The ALJ utilized two Grid Rules because Ms. Smith had changed "age categories" during the course of the disability proceedings from "younger individual age 18-49" to "closely approaching advanced age." *See* TR. 29.

a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUES PRESENTED

On appeal, Ms. Smith alleges the ALJ erred in: (1) evaluating Plaintiff's need for an assistive device; (2) failing to find Plaintiff's rheumatoid arthritis (RA) "severe" at step two, and later failing to consider the impairment in evaluating the RFC at step four; and (3) evaluating the prior administrative findings. (ECF Nos. 12:8-22, 20:2-9).

## V.   THE ALJ'S EVALUATION OF PLAINTFF'S NEED FOR AN ASSISTIVE DEVICE

Plaintiff alleges that the ALJ failed to properly consider her use of a walker and its potential effects on her RFC. (ECF Nos. 12:8-12, 20:2-3). The Court agrees.

### A.   Evidence Relating to Plaintiff's Need for an Assistive Device

At the administrative hearing, Plaintiff testified that in May of 2019 she suffered two strokes and was hospitalized. (TR. 44, 48). Plaintiff's discharge summary from the hospital stated that her "equipment needs" included a bariatric two-wheeled rolling walker and that Ms. Smith showed "good functional mobility using [a] walker" and "PT recommends she use a walker at home." (TR. 341, 345, 346, 347). In a January 16, 2020 progress note from Plaintiff's rheumatologist, Omar Silvestre, he noted that Plaintiff had

reported falling multiple times following her strokes. (TR. 457). After leaving the hospital and following a month of rehabilitation,  Ms. Smith stated she continued to not be able to stand for very long and she "would fall a lot." (TR. 48-49).

Plaintiff suffered a third stroke on January 24, 2020, which primarily affected her mentally,[3] but a hospital note on that date stated that Ms. Smith had an "[i]nability to ambulate secondary to weakness." (TR. 737). Approximately one month later, an occupational therapy note dated February 27, 2020 stated that Plaintiff had "impaired balance and gait" and was a "high falls risk." (TR. 250). In a function report dated March 4, 2020, Plaintiff stated that she "fall[s] quite a lot because of balance issues from [her] stroke[s]" and she cannot prepare meals because she has burned herself cooking due to "balance issues." (TR. 242, 244). Plaintiff also reported having been prescribed a walker which she uses when her pain is bad or when she "feel[s] unsteady or [off] balance." (TR. 248). At the hearing, Ms. Smith testified to having fallen several times, and stated that she currently used a walker. (TR. 58).

### B.    Error in the ALJ's Consideration of Plaintiff's Need for an Assistive Device

Social Security Ruling 96-9p provides that assistive devices such as walkers will be found medically necessary when there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

---

[3]  (TR. 49).

Furthermore, a prescription is not required for a hand-held assistive device to be medically necessary, only "medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191 n. 1 (10th Cir. 2009).

In the administrative decision, the ALJ mentioned Plaintiff's walker use by acknowledging what Plaintiff had stated on her function report regarding the walker prescription and her balance issues/reports of falls, as well as her hearing testimony that she used a walker to ambulate. (TR. 20, 21, 23). However, the ALJ did not further discuss Plaintiff's walker use or its potential effect on the RFC or Plaintiff's ability to work. For two reasons, the omissions constitute error.

First, although the ALJ acknowledged the walker prescription and Plaintiff's reports of suffering from balance issues and falls, the ALJ failed to explain why he obviously rejected the same. "[While] [t]he ALJ is not required to accept Plaintiff's testimony about her walker prescription at face value, . . . at a minimum the ALJ must explain why he rejected that testimony." *Thompson v. Berryhill*, No. CIV-17-923-R, 2018 WL 3427652, at *3 (W.D. Okla. July 16, 2018). Following the ALJ's recitation of Plaintiff's subjective complaints, including her testimony, the ALJ recited 6 pages of medical evidence, without mention of any evidence related to Plaintiff's balance, and then simply stated that claimant's statements about the intensity, persistence, and limiting effects of her symptoms, were inconsistent "because the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (TR. 28). But this statement is puzzling, and does not appear to support

a rejection of Plaintiff's complaints considering Ms. Smith stated she can no longer cook; she has trouble pulling up her pants, socks, and shoes; she spills food on herself; she needs help with her medication; she needs help doing laundry; she can only go out with others; she is no longer able to walk or swim or travel; when she goes to church, she cannot take part in any activities; and she can only walk 100 feet before she has to rest for 15 minutes. (TR. 242-249). Thus, the Court concludes that the ALJ's "explanation" insufficiently addresses Plaintiff's balance issues or need for a walker.

Second, the ALJ erred by failing to discuss whether the cane was "medically required," which he was required to do in light of the fact that the record contained "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, at *7; *see supra* (medical evidence noting that Ms. Smith had an "[i]nability to ambulate secondary to weakness," "impaired balance and gait" and was a "high falls risk."); *Wood v. Berryhill*, No. CIV-18-670-STE, 2019 WL 470914, at *4 (W.D. Okla. Feb. 16, 2019) (noting that a physician's assistant's observation regarding a plaintiff's "weak gait requiring a cane" consisted a medical opinion regarding the medical necessity of an assistive device); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (holding that "an ALJ is not required to discuss every piece of evidence," but must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

The ALJ acknowledged Plaintiff's testimony regarding her use of the walker but dismissed the need—apparently based on her "daily activities." *See supra*. That explanation was deficient, and in light of the medical evidence regarding the "medical necessity" of the walker, the ALJ had a duty to discuss the same, especially in light of the SSA's statement that "the occupational base for an individual who must use [an assistive] device for balance . . . may be significantly eroded." SSR 96-9p, at *7.

The Commissioner attempts to defend the ALJ's lack of explanation regarding Plaintiff's walker use, relying on:

- A lack of indication by a medical provider that Plaintiff reported the use of a walker, or observed or recommended the use of a walker;

- An observation by a consultative examiner in October 2020, that Plaintiff was observed moving around the office "with no complication or assistance needed;" and

- Prior administrative findings from State Agency physicians who "did not believe based on their review of the medical record that a limitation involving the use of a walker or another assistive device was necessary."

(ECF No. 19:3-5).

But based on Plaintiff's testimony and the medical documentation establishing Plaintiff's need for a walker and the plethora of supporting evidence, the ALJ was required to discuss Ms. Smith's need for an assistive device. The ALJ's failure to do so constitutes legal error. *See Thompson v. Berryhill*, 2018 WL 3427652, at *3 (finding legal error based on the ALJ's failure to discuss Plaintiff's need for an assistive device, stating "The ALJ acknowledged 'claimant's use of a walker/cane at times,' but erred by offering no reason

to discount that use as medically unnecessary, despite 'considerable evidence . . . to counter the agency's position.') (internal citation omitted).

Furthermore, the ALJ himself did not rely on findings from a consultative examiner or prior administrative findings to reject Plaintiff's medically-documented need to use a walker or her related testimony; and the Court is not permitted to supply *post hoc* rationales to uphold the Commissioner's decision. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Ultimately, the Court concludes that the ALJ's failure to explain his treatment of Plaintiff's need for a cane constitutes legal error and remand is warranted. *See supra, Thompson v. Berryhill*, (reversing based on the ALJ's failure to discuss evidence regarding Plaintiff's use of a cane or explain why he had rejected it or had failed to include it in the RFC); *McAnally v. Berryhill*, No. CIV-16-459-M, 2017 WL 4080696, at *3 (W.D. Okla. Aug. 29, 2017), *report and recommendation adopted*, No. CIV-16-459-M, 2017 WL 4079407 (W.D. Okla. Sept. 14, 2017) (recommending reversal because the ALJ failed to address an opinion which stated that the claimant required a cane for walking, an opinion which was "at odds" with the claimant's ability to perform "light" work).

## VI.   THE ALJ'S EVALUATION OF PLAINTIFF'S RHEUMATOID ARTHRITIS

Ms. Smith alleges that the ALJ erred in failing to consider her RA: (1) as a severe impairment at step two, and (2) in the RFC at step four. (ECF Nos. 12:12-19; 20:4-9). The Court finds the error at step two harmless but agrees that the ALJ erred at step four.

### A.   Evidence Relating to Plaintiff's RA

On May 8, 2018 Plaintiff was diagnosed with RA "of multiple sites." (TR. 434). In October of 2018, Plaintiff reported bad and constant joint pain in her hands, wrists, knees, and lower back, along with swelling and stiffness. (TR. 437). At that visit, Dr. Silvestre noted "active inflammation in [Plaintiff's] hands" and prescribed Hydroxychloroquine 200 mg. (TR. 440). On March 12, 2019, Plaintiff reported worsening pain, along with stiffness, and swelling, and reported that she had experienced a fall in her home. (TR. 443). Ms. Smith described her hand pain as  "a constant, dull aching" pain, moderate in severity. (TR. 443-444). In Dr. Silvestre's examination notes, he found Plaintiff to have arthralgia, myalgia, muscle weakness, joint swelling, neck pain, back pain, major orthopedic injuries, and widespread pain. (TR. 445). Dr. Silvestre noted swelling, tenderness, warmth, and redness/erythema in Plaintiff's shoulders, elbows, wrists, hips, knees, and ankles, and fingers, as well as tenderness to palpitation in Plaintiff's cervical, thoracic, and lumbar spines, and sacroiliac joints. (TR. 445). Despite continuing the Hydroxychloroquine, Dr. Silvestre noted that Plaintiff "continue[d] to have active inflammation in her joints, more prominently involving [her metacarpophalangeal joints]." (TR. 447). On November 1, 2019 and January 13, 2020, Plaintiff's reports and Dr. Silvestre's findings remained

unchanged, and Dr. Silvestre referred Plaintiff to a pain management clinic. (TR. 449-462).

At the administrative hearing, Ms. Smith testified that following her strokes, her RA had "gotten worse" with symptoms involving swollen hands, knees, ankles, difficulty with grip, skin infections, high fever, burning sores on her body, and difficulty sitting and standing and lying down due to joint pain and inflammation. (TR. 52-54). Plaintiff also stated that her RA caused her constant pain which affected her ability to sleep. (TR. 53).

## B.    Step Two

At step two, the agency determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment or combination of impairments is "severe," within the meaning of the social security regulations, if it "significantly limits her ability to do basic work activities." *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (internal citations omitted).

The SSA regulation that governs the determination of severity at step two is designed to screen out only those claimants with "impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2 (1985) (internal citation and quotation omitted); *see Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring) (noting that Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.").

Given the purpose behind step two, "case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676–77 (10th Cir. 2004). At step two, the claimant has the burden of proof to show that he or she has an impairment severe enough to interfere with his or her ability to work. *Bowen*, 482 U.S. at 146–54. The burden of proof at step two requires only a *de minimis* showing that an impairment is severe. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997); *see also Lee*, 117 F. App'x at 677 ("a claimant need only make a 'de minimis' showing of impairment to move on to further steps in the analysis). A claimant must provide objective evidence in the form of signs or laboratory findings as defined above " 'sufficient to suggest a reasonable possibility that a severe impairment exists.' " *Bryant v. Barnhart*, 2002 WL 1272243, at *2 (10th Cir. 2001) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). In other words, "the starting place [is] the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* The determination of whether an impairment is severe at step two "is based on medical factors alone and does not include consideration of such vocational factors as age, education, and work experience." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (internal citation and quotation omitted).

If there is medical evidence consisting of such objective evidence, such as signs, symptoms, and laboratory findings establishing an impairment, the issue then becomes whether the claimant has made "a threshold showing that his [or her] medically

determinable impairment or combination of impairments significantly limits his [or her] ability to do basic work activities, i.e., 'the abilities and aptitudes necessary to do most jobs.' " *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* at *3; *see also Langley*, 373 F.3d at 1123.

At step two, the ALJ must carefully evaluate the medical evidence to assess how the claimant's impairment or combination of impairments impacts her ability to do basic work activities. SSR 85-28, 1985 WL 56856, at *4. The ALJ may make a finding of non-severity at step two only when the medical evidence establishes no more than a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. Social Security Ruling 85-28 requires that the evidence "clearly establish[ ]" that the impairment is not severe. The ruling reads, in pertinent part:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are **not** medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. SSR 85-28, 1985 WL 56856, at *3 (emphasis added). Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the

sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

*Id.* at *4.

Here, at step two, the ALJ determined that Plaintiff had "severe" impairments involving "late effects of injury to the nervous system and diabetes mellitus." (TR. 18). The ALJ did not, however, find that Plaintiff's RA was a severe impairment, instead concluding that it caused no more than a minimal limitation in her ability to perform basic work activities. (TR. 18). But the Court concludes otherwise, finding that the objective evidence is sufficient to have met the *de minimis* standard at step two which would render the RA severe.

However, the issue at step two is whether the claimant suffers from at least *one* "severe" impairment. *See Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009). In circumstances where an ALJ deems at least one impairment severe, and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

In the instant case, the ALJ determined that Ms. Smith suffered from two "severe" impairments. *See supra*. (TR. 18). Following those findings, the ALJ continued to perform the sequential disability evaluation at it pertained to Ms. Smith. (TR. 19-30). Thus, the

error at step two in failing to deem Plaintiff's RA a "severe" impairment, is considered harmless. *See supra*.

### C.    Step Four

The rationale behind the application of harmlessness at step two is "because *all* medically determinable impairments, severe or not, must be taken into account at those later steps [of the sequential evaluation]." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*."). Ms. Smith alleges that the ALJ failed to consider the effects of her RA when formulating the RFC. (ECF No. 12:17-19; 19:4-9). The Court agrees.

As stated, at step two, the ALJ concluded that Plaintiff's RA was not severe. (TR. 18). In assessing the RFC at step four, the ALJ obviously believed that Plaintiff suffered no functional limitations relating to the RA, as is reflected by his absence of the same in the RFC. The ALJ was entitled to reach this conclusion, but according to Ms. Smith, the ALJ erred at step four by failing to consider the *effect* of the RA on the RFC. (ECF No. 8:10-15). The Court agrees.

At step four, in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. *See* 20 C.F.R. §§ 404.1545(a)(2). The ALJ recognized this standard, but beyond

a boilerplate recitation of the same, the RFC discussion is entirely devoid of any indication that the ALJ considered the effect of Plaintiff's RA on her RFC.

In evaluating the RFC, the ALJ acknowledged Plaintiff's allegation that her RA limited her ability to work, noting that Plaintiff had stated that she could not stand or walk for long periods of time due, in part to her RA, which was "getting worse." (TR, 20, 22). However, as discussed, the ALJ's rationale for rejecting Plaintiff's testimony lacked substantial evidence. *See supra*. In his recitation of the medical evidence, the ALJ also noted that x-rays dated March 4, 2020 revealed "moderate osteoarthritis of the lumbar spine" and a "markedly prominent anterior osteophyte at C5-C6," but the ALJ never mentioned any of Dr. Silvestre's records, which the Court finds unacceptable, as the rheumatologist repeatedly noted that Plaintiff suffered from swelling, tenderness, warmth, and redness/erythema in her shoulders, elbows, wrists, hips, knees, and ankles, fingers, as well as tenderness to palpitation in her cervical, thoracic, and lumbar spines, and sacroiliac joints. *See supra*. The ALJ's failure to even acknowledge records from Plaintiff's rheumatologist which substantiate her testimony (which the ALJ discounted) constitutes reversible error. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding the record "must demonstrate that the ALJ considered all of the evidence. . . [including] significantly probative evidence he rejects"). On remand, the ALJ shall specifically discuss Plaintiff's RA and Dr. Silvestre's findings in connection with Plaintiff's RFC.

## VII.  THE ALJ'S EVALUATION OF PRIOR ADMINISTRATIVE FINDINGS

In her final allegation of error, Plaintiff challenges the ALJ's evaluation of prior administrative medical findings.[4] The Court agrees that the ALJ erred.

### A.    The ALJ's Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In doing so, 20 C.F.R. § 404.1520c provides that the ALJ must articulate how persuasive he finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) is persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(1).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the

---

[4] Prior administrative medical findings are findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. 20 C.F.R. § 404.1513(a)(5).

source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### B.   Prior Administrative Medical Findings and the ALJ's Related Evaluation

At the initial and reconsideration levels of the disability determination, State Agency physicians Drs. Craig Billinghurst and Sarah Yoakam reviewed Plaintiff's medical file and evaluated her physical health by rendered "prior administrative medical findings." (TR. 64-73, 75-95). In doing so, Drs. Billingshurst and Yoakam found that Plaintiff could perform the full range of light work with no additional limitations. (TR. 69-70, 88-90). The ALJ deemed these findings persuasive, stating that both physicians "supported [their] medical opinion[s] with a written statement" and the opinions are "well-supported by the evidence." (TR. 28).

### C.   Error in the ALJ's Evaluation of the Prior Administrative Findings

Ms. Smith alleges error in the ALJ's evaluation of the findings from Drs. Billinghurst and Yoakam, stating that the ALJ failed to evaluate the "consistency" factor as required by 20 C.F.R. § 404.1520c(c)(1). (ECF No. 12:21-22). The Court agrees. Arguably, the ALJ's statement that the opinions are "well-supported by the evidence" could amount to a "consistency" analysis. *See supra* (noting that "consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent.). However, the Court is unable to

follow the ALJ's reasoning in this regard as the ALJ fails to explain how, exactly, the prior administrative findings are consistent with other evidence of record. This failure is especially concerning in light of evidence regarding Plaintiff's RA which causes her joint pain and difficulty walking, sitting, standing, and gripping, and evidence suggesting Ms. Smith's need to use an assistive device. *See supra*. The Commissioner attempts to defend the ALJ's analysis, by citing:

- the ALJ's reliance on the medical consultants' "written statements,"

- the ALJ's reliance on "normal examination findings showing that Plaintiff was not limited as alleged," and

- Plaintiff's testimony "reflecting limitations that were not consistent with the objective medical evidence in the record."

(ECF No. 19:12). For two reasons, the Court is not persuaded by Ms. Kijakazi's arguments.

First, although the ALJ referred to "written statements" from the State Agency physicians, he did not elaborate regarding which "statements" exactly in the physicians' reports were the statements to which he had referred.

Second, the ALJ himself did not rely on "normal examination findings" or Plaintiff's testimony in his evaluation of the prior administrative findings, and the Court may not now engage in post hoc rationalizations to justify the ALJ's decision. *See supra.*

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties.

Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 26, 2023.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE